IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| KENNETH WILLIAM QUINLAN, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV 04-0224-S-MHW |
| | ) | |
| v. | ) | **MEMORANDUM ORDER** |
| | ) | |
| RANDY BLADES, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| _____) | | |

Pending before the Court are Respondent's Motion for Summary Judgment (Docket No. 45), Respondent's Motion to Strike Affidavits (Docket No. 52), and Petitioner's Motion to Expand the Record (Docket No. 54). The Motions are now fully briefed, and oral argument is unnecessary. Both parties have consented to the jurisdiction of a United States Magistrate Judge to determine the matter, in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73 (Docket Nos. 10 & 12). Having completed a review of the above-entitled action, including the record herein and the record of the state

MEMORANDUM ORDER 1

proceedings, and having considered the arguments of the parties, the Court enters the following Order.

## I.

## BACKGROUND

In 1973, Petitioner was convicted of second degree-murder and sentenced to life in prison. Petitioner was paroled in 1985. Approximately four years later, he was arrested for driving under the influence, but his parole was continued with the imposition of new conditions, one of which was that he waive his driving privileges. In March 1991, Petitioner's parole was revoked again, but it was reinstated later that same year. Finally, in 1994, Petitioner's parole was revoked for several reasons, including a violation of the condition that he not drive. Following the final revocation, the Idaho Commission for Pardons and Parole ("Commission") passed Petitioner to his full-term release date. Petitioner's subsequent parole requests, filed as "Self-Initiated Progress Reports," were denied in 1996 and 2001.

Petitioner filed a state Petition for Writ of Habeas Corpus in 1998. His claims proceeded through the Idaho Supreme Court, where he was unsuccessful. The judgment became final on May 21, 2003. *See State's Exhibit C-4*. Petitioner filed this federal habeas corpus action on May 7, 2004.

Petitioner raised three claims in his Petition for Writ of Habeas Corpus: (1) the parole condition requiring Petitioner to waive his driving privileges is overbroad, in

violation of the Eighth and Fourteenth Amendments; (2) the Commission's decision to change mandatory parole hearings to discretionary hearings violates the Ex Post Facto Clause of Art. I, § 10; and (3) the denial of counsel in Petitioner's non-frivolous state habeas proceeding violated his right to due process and equal protection under the Fourteenth Amendment. The Court previously determined that Claim 3 was not cognizable.

## II.

## MOTION FOR SUMMARY JUDGMENT

**A.  Summary Judgment Standard of Law**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Federal Rules of Civil Procedure apply to habeas corpus actions except where application of the rules would be inconsistent with established habeas practice and procedure. Rule 11, Rules Governing Section 2254 Cases. Accordingly, summary judgment motions are appropriate in habeas corpus proceedings where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Blackledge v. Allison*, 431 U.S. 63, 80-81 (1977).

**B.  Claim 1: Procedural Default**

MEMORANDUM ORDER 3

Claim 1 is that the parole condition requiring Petitioner to waive his driving privileges was overbroad, in violation of the Eighth and Fourteenth Amendments. Respondent first argues that Petitioner's Claim 1 is procedurally defaulted because Petitioner failed to properly raise it in state court. Petitioner did not respond to this argument. The Court agrees that it is procedurally defaulted.

1. <u>Standard of Law</u>

A federal habeas petitioner must first exhaust his state court remedies as to all of his constitutional claims before presenting them to the federal court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Unless a petitioner has exhausted his state court remedies relative to a particular claim, a federal district court may deny the claim on its merits, but it cannot otherwise grant relief on such unexhausted claims. 28 U.S.C. § 2254(b). The petitioner can satisfy the exhaustion requirement by showing that (1) he has "fairly presented" his federal claim to the highest state court with jurisdiction to consider it, or (2) that he did not present the claim to the highest state court, but no state court remedy is available when he arrives in federal court (improper exhaustion). *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996) (citations omitted).

To exhaust a habeas claim properly, a habeas petitioner must invoke one complete round of the state's established appellate review process, giving the state courts a full and fair opportunity to correct the alleged constitutional error at each level of appellate review. *Baldwin v. Reese*, 541 U.S. 27 (2004). "[O]rdinarily a state prisoner does not

MEMORANDUM ORDER 4

'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Id*. at 32.

The mere similarity between a state law claim and a federal claim does not constitute fair presentation of the federal claim. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995). General references in state court to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are likewise insufficient. *See Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999).

2.  Discussion

While Petitioner raised a similar claim in state court regarding the condition that he not drive a motor vehicle, he failed to assert an Eighth Amendment argument in his appellate brief before the Idaho Court of Appeals. *See State's Exhibit B-1*. Petitioner did not raise a parole condition claim at all in his petition for review before the Idaho Supreme Court. *See State's Exhibit C-1*. As a result, the claim is procedurally defaulted. Petitioner has failed to show cause and prejudice or a miscarriage of justice for the default of this claim, and, hence, it shall be dismissed with prejudice.

Alternatively, Petitioner has failed to show that the Idaho Supreme Court's decision on the merits of this claim is contrary to, or an unreasonable application of, established federal law as determined by the United States Supreme Court precedent. *See* 28 U.S.C. § 2254(d). In general, the Supreme Court has stated that "a court granting

MEMORANDUM ORDER 5

probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens." *U.S. v. Knights*, 534 U.S. 112, 119 (2001) (Fourth Amendment). Petitioner cites no United States Supreme Court precedent applying the Eighth and Fourteenth Amendment to parole conditions.[1] Therefore, Petitioner's claim is deemed barred by *Teague v. Lane*, 489 U.S. 288 (1989),[2] or, alternatively, it does not

---

[1] Lower court decisions do not support Petitioner's cruel and unusual punishment argument. *See, e.g., State v. Sandoval*, 452 P.2d 350, 358 (Idaho 1969) ("When it is remembered that defendant's crime arose out of the operation of a motor vehicle, the condition of probation prohibiting him from driving bears a reasonable relationship to his crime and to his rehabilitation. To impose such condition was not an abuse of discretion. * * * There has been no showing that the condition is impossible of fulfillment."); *U.S. v. Fields*, 324 F.3d 1025 (8th Cir. 2003) ( person who had been convicted of selling child pornography failed in his challenge that restricting his use of cameras, computers, and the Internet for three years violated the Eighth Amendment and was unconstitutionally vague); *State v. McSweeney*, 860 P.2d 305 (Or. Ct. App. 1993) (requiring person charged with endangering welfare of minor to cease living with her spouse if he returned to drug use was not cruel and unusual punishment); *U.S. v. Gementera*, 379 F.3d 596 (9th Cir. 2004) ("shaming punishment," such as requiring an offender to stand outside the post office for one day wearing a sign that says, "I stole mail. This is my punishment," does not offend the Eighth or Fourteenth Amendment).

[2] To determine whether a claim is barred by *Teague*'s non-retroactivity principles, a reviewing court engages in a three-step process. First, the court must ascertain the date on which the defendant's conviction and sentence became final. *Caspari v. Bohlen*, 510 U.S. 383, 390 (1994). Second, the court must survey "the legal landscape as it then existed" to determine whether existing precedent compelled a finding that the rule at issue "was required by the Constitution." *Lambrix v. Singletary*, 520 U.S. 518, 527 (1997). If the rule is considered "new," the court must proceed to the third step and determine whether either of the two announced exceptions applies. *Teague*, 489 U.S. at 307. The presumption against retroactivity is overcome only if the new rule prohibits "a certain category of punishment for a class of defendants because of their status or offense," *Penry v. Lynaugh*, 492 U.S. 302, 330 (1989), *abrogated on other grounds by Atkins v. Virginia*, 536 U.S. 304 (2002), or presents a new "watershed rule of criminal procedure" that enhances accuracy and alters our understanding of bedrock procedural elements essential to the fairness of a particular conviction. *Teague*, 489 U.S. at 311.

In Petitioner's case, there is no precedent supporting his position, and the exceptions do not apply.

MEMORANDUM ORDER 6

meet the conditions set forth in 28 U.S.C. § 2254(d) to warrant federal habeas corpus relief.

**C.    Claim 2**

Claim 2 is that the Commission's decision to change mandatory parole hearings to discretionary hearings violates the Ex Post Facto Clause of Art. I, § 10.  The Court now reviews the merits of this claim.

    1.    <u>Standard of Law</u>

In order to obtain federal habeas corpus relief from a state court judgment, the petitioner must show that the state court's adjudication of the merits of his federal claim either:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362, 385 (2000), the United States Supreme Court explained that, to prevail under § 2254(d)(1), a petitioner must show that the state court was "wrong as a matter of law," in that it "applie[d] a legal rule that contradicts our prior holdings" or that it "reache[d] a different result from one of our cases despite confronting indistinguishable facts." *Ramdass*, 530 U.S. 156, 165-66 (2000) (citing *Williams*).  Or, a

MEMORANDUM ORDER 7

petitioner can prevail by showing that the state court was "[objectively] unreasonable in applying the governing legal principle to the facts of the case," or "was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled," *Ramdass*, 530 U.S. at 166 (citing *Williams*); however, a petitioner cannot prevail under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Williams*, 529 U.S. at 411.

2. Discussion

The Idaho Supreme Court relied upon *California Department of Corrections v. Morales*, 514 U.S. 499 (1995), for its ex post facto analysis.  In *Morales*, the Court determined that an ex post facto violation occurs in the context of parole when an inmate points to rules or procedures that were adopted *after* the date of an inmate's sentence *and* he demonstrates that such rules or procedures "produce[] a sufficient risk of increasing the measure of punishment attached to the covered crimes."  *Id*. at 509.  The Idaho Supreme Court also relied upon *Garner v. Jones*, 529 U.S. 244 (2000), which instructs that the ex post facto analysis "must take into account whether a rule change violates the Ex Post Facto Clause either facially or as applied."[3]  *State's Exhibit C-3*, at p. 8.  The Idaho Supreme Court acknowledged that an inmate's "ability to request expedited

---

[3] In *Garner*, the Court found no facial violation of the Ex Post Facto Clause, but remanded the case for a determination of the inmate's "as applied" challenge.  529 U.S. at 256-57.

MEMORANDUM ORDER 8

reviews to consider a change in circumstances or new information" is "a key factor in finding no facial invalidity," and that the "gravaman" of the "as applied" test is "the risk of increasing the inmate's own sentence." *Id.* (citing *Garner*, 529 U.S. at 254).

The history of the change in the Idaho parole procedures is as follows. The Idaho legislature placed authority in the Commission to determine the appropriate interval between an inmate's parole hearings. *See* Idaho Code § 20-223(c). When Petitioner was convicted in 1973, the Commission Rule was that a reconsideration hearing must be held no less than every 30 months, beginning 30 months after the original denial of the parole. *See Izatt v. State*, 661 P.2d 763, 765 n.2 (1983) (setting forth former rule). In 1987, the Commission amended its Rules to delete the 30-month requirement. Instead, inmates are required to submit Self-Initiated Parole Report (SIPR) if they wished to be reconsidered for parole. An SIPR can be submitted once per year, and each request has to show a change in circumstances. *See* IDAPA 50.01.01.500, *et seq*.

The Idaho Supreme Court noted that the following factors were *not* changed with the 1987 Rule amendment: (1) the standards for parole eligibility are not different; (2) the original parole eligibility date remains the same; (3) the Commission's discretion is the same; and (4) an option for inmate-initiated review remains in place. *See State's Exhibit C-3*, at p. 8.

Based on the foregoing, the Idaho Supreme Court found, "While there are indeed differences between the Idaho Rule change and the changes in *Morales* and *Garner*, those

MEMORANDUM ORDER 9

differences do not create a sufficient risk of increased punishment in Idaho due to the rule change." *Id.* at p. 9.  The Idaho Supreme Court concluded, "Because Quinlan's punishment has not been changed, nor a harsher punishment inflicted, the Ex Post Facto Clause of the United States Constitution has not been violated."  *Id.*

This Court concludes that the Idaho Supreme Court's interpretation and application of the governing precedent is not unreasonable.  The United States Supreme Court has made it clear that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."  *Greenholtz v. Inmates of Nebraska Penal and Corr. Complex*, 442 U.S. 1, 7 (1979).  State courts have articulated this principle by deeming parole not a matter of right or privilege, but a matter of grace or clemency.  See *Malloroy v. State*, 435 P.2d 254, 255 (Idaho 1967).

Petitioner argues that his case is distinguishable from *Garner* because the new Georgia scheme simply moved the mandatory parole reconsideration hearing dates from every three years to every eight years, while the new Idaho scheme *eliminated* all mandatory parole reconsideration hearings after an original hearing denying parole.  The result, he argues, is that the change removes the Commission's ability to grant parole merely as a matter of grace, rather than requiring the inmate to show a change in circumstances.

However, Petitioner's argument misconstrues the term "grace."  "Grace" as a description of a grant of parole was meant to address the issue that parole was not a *right*.

MEMORANDUM ORDER 10

*See id.* "Grace" was never meant to convey a meaning that the Commission would release a prisoner without considering, applying, and finding that an inmate met certain eligibility factors.[4]  Idaho law is clear that "[a] parole is not a pardon." *Gibson v. Bennett*, 108 P.3d 417 (Idaho App. 2005) (citing *Standlee v. State*, 538 P.2d 778, 781 (Idaho 1975)).  Rather, "[b]ecause parole is a 'gratuity,' it will be ordered only for the best interests of society when the Commission believes the prisoner no longer poses a threat to society and is able and willing to fulfill the obligations of a law abiding citizen." *Mellinger v. Idaho Dept. of Corrections*, 757 P.2d 1213 (Idaho Ct. App. 1988) (citing I.C. § 20-223).  Based on these principles, it is a fallacy to believe that after an inmate had originally been denied parole, the Commission would then release him at the next mandatory hearing simply based upon "grace," without requiring that Petitioner show a change in circumstances to make him eligible for parole.

In fact, the ability of an inmate to present a change in circumstances was a key factor leading to the United States Supreme Court's conclusion that the Georgia parole scheme in *Garner* was facially valid:

> [T]he Board's policies permit "expedited parole reviews in the event of a change in their circumstance or where the Board received new information that would warrant a sooner review." App. 56.  These qualifications permit a more careful and accurate exercise of the discretion the Board has had from the outset.  Rather than being required to review cases *pro forma*, the Board may set reconsideration dates according to the

---

[4] Petitioner brings forward no case suggesting that the Commission has ever released anyone on parole simply as a matter of "grace."

MEMORANDUM ORDER 11

> likelihood that a review will result in meaningful considerations as to whether an inmate is suitable for release.

529 U.S. at 254.

In other words, the "change in circumstances" provision bolsters the statute's constitutionality, rather than rendering it unconstitutional, as Petitioner argues. The provision makes abundant practical sense, given that the Board has already decided that an inmate, in his *current* circumstances, is unsuitable for parole. The "change in circumstances" presented in an SIPR could be as simple as showing that an inmate has aged and is statistically less likely to reoffend, or it could be new evidence of rehabilitation, as Petitioner wishes to present. *Garner* never contemplated that an inmate would be paroled after original denial *unless* he brought forward something new to prove his suitability for parole,[5] and the Court rejects Petitioner's "paroled by grace alone" argument here as a basis to attack the constitutionality of the 1987 Rule.

Even without the "paroled by grace" argument, Petitioner has not shown that the change from mandatory review hearings to an SIPR system with no mandatory review hearings is significant for ex post facto purposes. In *Garner*, the Court stated that the number of years between reconsideration hearings was not dispositive, but the operative question was "whether the amended [] Rule creates a significant risk of prolonging

---

[5] "The essence of respondent's case, as we see it, is not that discretion has been changed in its exercise but that, in the period between parole reviews, it will not be exercised at all. The statutory structure, its implementing regulations, and the Parole Board's unrefuted representations regarding its operations do not lead to this conclusion." *Garner*, 529 U.S. at 254.

MEMORANDUM ORDER 12

respondent's incarceration." 529 U.S. at 251. In Idaho, although there are no mandatory reconsideration hearings, the Commission must consider each SIPR and schedule a hearing if it deems appropriate. There is nothing in the record to show that the Board would exercise its discretion differently – and, specifically, in a manner that would create a risk of prolonging Petitioner's incarceration – simply because the system has been changed to SIPRs rather than mandatory review hearings.

Similarly, in *Morales*, the Supreme Court held that the California law did not violate the ex post facto prohibition because: (1) the statute applied to a class of prisoners for whom "the likelihood of release on parole [was] quite remote," 514 U.S. at 510; (2) the amendment did not affect the timing of the prisoner's initial parole hearing, only the timing of reconsideration hearings, *id*. at 511, and (3) the parole board retained "the authority to tailor the frequency of subsequent hearings [ ] to the particular circumstances of [an] individual prisoner." *Id*. While Idaho's Rule applies to all prisoners, Petitioner is one of the class of prisoners for whom the likelihood of release on parole is fairly remote, because he has a life sentence. Therefore, the first *Morales* factor is favorable to the statute when Petitioner's particular status is considered. The other two *Morales* factors weigh in favor of the facial validity of the Idaho statute because they hold true for the Idaho system.

The *Morales* Court placed specific emphasis on the fact that the California amendment affected only those inmates who *had already been found* unsuitable for parole *after a hearing where due process protections were in place*:

> The California Supreme Court has noted that about 90% of all prisoners are found unsuitable for parole at the initial hearing, while 85% are found unsuitable at the second and subsequent hearings. *In re Jackson*, 39 Cal.3d, at 473, 216 Cal.Rptr., at 764, 703 P.2d, at 105. In light of these numbers, the amendment "was seen as a means 'to relieve the [Board] from the costly and time-consuming responsibility of scheduling parole hearings for prisoners who have no chance of being released.' " *Ibid*. (quoting legislative history).
>
> Second, the Board's authority under the amendment is carefully tailored to that end. The amendment has no effect on the date of any prisoner's initial parole suitability hearing; it affects the timing only of subsequent hearings. Accordingly, the amendment has no effect on any prisoner unless the Board has first concluded, after a hearing, not only that the prisoner is unsuitable for parole, but also that "it is not reasonable to expect that parole would be granted at a hearing during the following years." Cal.Penal Code Ann. § 3041.5(b)(2) (West 1982). "This is no arbitrary decision," *Morris v. Castro*, 166 Cal.App.3d 33, 38, 212 Cal.Rptr. 299, 302 (1985); the Board must conduct "a full hearing and review" of all relevant facts, *ibid*., and state the bases for its finding. Cal.Penal Code Ann. § 3041.5(b)(2) (West 1982). Though California law is not entirely clear on this point, the reliability of the Board's determination may also be enhanced by the possibility of an administrative appeal. See 15 Cal.Admin.Code, § 2050 (1994).

*Id*. at 510-11.

Similarly, taking Petitioner's case as an example, the Commission provided Petitioner with an initial hearing. He was paroled at least three times between 1985 and 1994, and each time he violated parole. Following his 1994 parole revocation hearing, he was passed to his full-term release date, life, because he was deemed unsuitable for

MEMORANDUM ORDER 14

parole.  *See Petitioner's Brief*, at p. 3 (Docket No. 5).  In addition, Petitioner may administratively appeal the decision by filing yearly SPIRs.

Based on all of the foregoing, the Court concludes that the Idaho Supreme Court's decision is not unreasonable in light of prevailing precedent.  No relief on the facial challenge is warranted given the standard set forth in 28 U.S.C. § 2254(1).

Petitioner also presents an "as applied" ex post facto challenge.  He argues that, in order to be parole eligible, he is required to take certain rehabilitative classes.  Because the classes are so full, the prison does not allow an inmate to participate in the classes unless he is within two years of his parole eligibility date.  This rule potentially places Petitioner in a "Catch 22" situation, where he cannot enter the classes to become eligible for parole, and he cannot become eligible for parole unless he is permitted to enter the classes.

The Court finds Petitioner's "as applied" challenge more compelling than his facial challenge.  However, the problem in this case is that Petitioner has never presented this particular argument to the Idaho Supreme Court.  Petitioner is now contesting the denial of parole which occurred in 1996; he was not rejected as a class participant until 2002. Therefore, the evidence he now attempts to present was not in existence and could not have been used to support his position in the state courts in the year 1998.

In fact, in support of his claim presented in state court, Petitioner relied on nearly the opposite facts and argument in his appellate brief:

MEMORANDUM ORDER 15

> In response to the alleged safeguard of the Petition for Self-Initiated Progress Report to achieve a reconsideration hearing, Quinlan has twice petition[ed] the Parole Board for a hearing; the last time was in July of this year (2001). He presented the only parole plan that was possible, given the uncertainty of release, that of a residence, and the results of his efforts to make positive changes with his life[,] as is shown by the Certificates of Completion of various self-help programs listed as exhibits "D, E, F, and G." It appears that this effort is not being recognized by anyone.

*State's Exhibit B-1*, at p. 16. Petitioner attached to his brief certificates showing that he had completed the following self-help classes at the prison: Relapse Prevention Course, Thinking Errors Orientation Phase I, Alcohol Drug Education Program, and Medicine Wheel and 12-Step Study. *See id (exhibits).*

In short, Petitioner's appellate brief shows that he presented a very different argument to the Idaho Supreme Court – that he did, in fact, complete rehabilitative courses, and that this progress was ignored by the Parole Board. Petitioner presented no argument or evidence that he was prevented from taking a class that was required for parole eligibility.

Only if Petitioner had attempted to take the class in the 1990s, had been rejected as a participant, *and* had attempted to present this evidence to the state district court, could he now present the evidence in federal court today. Petitioner has not shown that he meets the standard for bringing new evidence in federal court.[6] Because the state courts

---

[6] Rule 7 of the Rules Governing § 2254 cases allows the district court to expand the record without holding an evidentiary hearing. In *Cooper-Smith v. Palmateer*, 397 F.3d 1236 (9th Cir. 2005), the court held that the requirements of 28 U.S.C. § 2254(e)(2) govern requests to expand the record under Rule 7, regardless of whether an evidentiary hearing is requested. *Cooper-Smith* relies upon *Holland v. Jackson*, 542 U.S. 649 (2004), where the United States

have never had the opportunity to consider the 2002 facts, this Court cannot consider them.

For these same reasons, the Court shall deny Petitioner's Motion to Expand the Record, seeking to introduce affidavits of other inmates who were denied entrance into the rehabilitative class in 2002, and it shall grant Respondent's Motion to Strike these affidavits.

The 2002 classes issue can be considered a new, unexhausted claim.  Petitioner apparently has not been denied parole since being rejected as a rehabilitative class participant, and he has not exhausted this issue in the Idaho Courts.  Therefore, it cannot be heard in federal court at this time.  On the record properly before this Court, federal habeas corpus relief is not warranted, and Petitioner's Petition shall be dismissed.

## III.

## ORDER

---

Supreme Court determined that a petitioner seeking to bring forward new evidence in a federal habeas relief action must satisfy § 2254(e)(2), even when he does not seek an evidentiary hearing.  542 U.S. at 653.
    Title 28 U.S.C. §2254(e)(2) bars the introduction of new evidence in federal habeas proceedings unless the petitioner (1) exercised diligence in his efforts to develop the factual basis of his claims in state court, *and* (2) shows that his claims are based either on a new retroactive rule of constitutional law or on a factual predicate that could not have been previously discovered through the exercise of due diligence.  "Diligence for purposes of the opening clause [of § 2254(e)(2) ] depends upon whether [petitioner] made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court[.]" *Williams v. Taylor*, 529 U.S. 420, 435 (2000).

NOW THEREFORE IT IS HEREBY ORDERED that Respondent's Motion for Summary Judgment (Docket No. 45) is GRANTED.  Petitioner's Petition is dismissed with prejudice, except for the "as applied" ex post facto claim related to Petitioner's inability to enter rehabilitative classes in 2002; that claim is dismissed without prejudice.

IT IS FURTHER HEREBY ORDERED that Respondent's Motion to Strike Affidavits (Docket No. 52) is GRANTED.

IT IS FURTHER HEREBY ORDERED that Petitioner's Motion to Expand the Record (Docket No. 54) is DENIED.

DATED:  **August 3, 2006**

Honorable Mikel H. Williams
United States Magistrate Judge

MEMORANDUM ORDER 18